UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| FOLARIN AWOFALA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 06-2100 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 18 |
| | : | | |
| CENTRAL PARKING SYSTEM OF VIRGINIA, INC., | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. The plaintiff alleges that the defendant, Central Parking System of Virginia, Inc. ("the defendant" or "Central Parking"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981, discriminated against him on the basis of his race and national origin and retaliated against him in response to his complaint of unlawful discrimination.

The court concludes that the statute of limitations bars the plaintiff's claims premised on the defendant's failure to promote him in 2001 and 2003 and that the plaintiff failed to establish a prima facie case of discrimination for his 2005 failure to promote claim. The court further concludes that the plaintiff failed to create a triable issue of material fact as to whether the defendant's asserted non-retaliatory reasons for his termination were pretextual. Accordingly, the court grants the defendant's motion for summary judgment.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The plaintiff, an African man of Nigerian descent, worked for the defendant as a valet parking attendant in Washington, D.C. from September 1999 until August 2005.  Compl. ¶ 33; Pl.'s Supplemental Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Supplemental Opp'n"), Ex. 8 ("Pl.'s Aff.") ¶¶ 2, 8, 39.  He began as a parking attendant at the Hyatt Regency Hotel and later applied for and was promoted to the position of Lead Attendant at the Melrose Hotel.  Def.'s Statement ¶ 7; Pl.'s Supplemental Statement ¶ 3.  The defendant later transferred the plaintiff from the Melrose Hotel to the Mayflower Hotel and reassigned him from the Lead Attendant back to a parking attendant.  Def.'s Statement ¶¶ 8-9; Pl.'s Supplemental Statement ¶¶ 4-5.

At some point in 2001, 2003 and 2005, the plaintiff applied[1] for promotions for managerial and/or supervisory positions.  Def.'s Statement ¶¶ 56-63; *see* Pl.'s Supplemental Statement ¶¶ 58, 60-62.  He was never promoted.  Compl. ¶¶ 18.

While working at the Mayflower Hotel on June 18, 2004, the plaintiff was involved in an incident in which a key to a vehicle was lost.  Def.'s Statement ¶¶ 11-12; Pl.'s Supplemental Statement ¶ 7.  The plaintiff engaged in a phone conversation regarding this incident with Brian Rettinger, the defendant's Project Manager at the Mayflower Hotel at the time, during which Rettinger allegedly referred to the plaintiff a "you monkey."  Pl.'s Supplemental Statement ¶ 11.  As a result, on June 22, 2004, the plaintiff filed an internal, confidential complaint against Rettinger.  Def.'s Statement ¶ 18; Pl.'s Supplemental Statement ¶ 13.  Jason Salamon, the

---

[1] The parties dispute whether the plaintiff formally applied for any open positions as required by Central Parking's policy and the applicable collective bargaining agreement.  Def.'s Statement ¶¶ 54, 56-61; Pl.'s Supplemental Statement ¶¶ 58, 60-63.  When reviewing a defendant's motion for summary judgment, however, the court accepts the plaintiff's version of the facts as true and, thus, the court assumes that the plaintiff properly applied for each position.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

defendant's Human Resources Manager at the time, investigated the complaint but could not locate a corroborating witness nor did he discover other complaints of discrimination against Rettinger. Def.'s Mot., Ex. 3 ("Salamon Decl.") ¶ 4. Salamon concluded that the most likely scenario was a misunderstanding due to the fact that the conversation occurred over the phone and the similarity of the words "black monkey" and "lost key" or "car key," and he closed the investigation without any formal action against Rettinger. *Id.* ¶¶ 6-7. Pursuant to Central Parking policy, Salamon kept the complaint and grievance files in his office, separate from the plaintiff's personnel file. *Id.* ¶ 7.

Rettinger was subsequently transferred to another location and Shimelis Akalu became the defendant's Project Manager at the Mayflower Hotel. Def.'s Statement ¶¶ 27-28; Pl.'s Supplemental Statement ¶¶ 25, 27. The plaintiff was "written up"[2] twice by Akalu in the twelve months prior to his termination; the second write up contained a "final warning."[3] Def.'s Statement ¶¶ 30, 32; Pl.'s Supplemental Statement ¶¶ 30, 32.

On August 7, 2005, the plaintiff was involved in a dispute with another attendant while parking a car. Pl.'s Aff. ¶ 33. The plaintiff brought the issue to Abdoula Dewa, the Lead Attendant on duty, and witness statements attest to an argument between the two that included cursing in the lobby of the Mayflower Hotel. *Id.*; Def.'s Mot., Ex. 3 ("Akalu Dep."), Attach. 1 ("Dewa Statement") & Attach. 2 ("Membere Statement"). After this incident, Akalu suspended the plaintiff, investigated the incident and ultimately decided to terminate the plaintiff. Akalu

---

[2]   Central Parking issues written notice warnings that detail an employee's violation of company policy. Def.'s Statement ¶ 30. These notices remain in an employee's file. Akalu Dep. at 35-36. If a violation of company policy occurs in the future, any notices issued during the preceding twelve months are considered when determining further disciplinary action. *Id.* at 95.

[3]   The final notice read, "[t]his will serve as final warning and any future violations will result in disciplinary action up to and including termination." Def.'s Mot, Ex. 1 ("Pl.'s Dep."), Attach. 16 ("Employee Written Notice Warning 2/18/05").

Dep. at 49-50, 52.  The plaintiff asserts that he merely joked around with Dewa about the parking dispute, that termination over such an incident was unreasonable and that the real reason for his termination was retaliation for the confidential complaint against Rettinger.  Pl.'s Supplemental Statement ¶ 37; Pl.'s Opp'n at 16.

On February 14, 2006 the plaintiff submitted an Equal Employment Opportunity Commission ("EEOC") Questionnaire Form ("Questionnaire") alleging discrimination, failure to promote and retaliation against the defendant.  Pl.'s Aff. ¶ 45.  Tracy Smalls, the EEOC secretary who attended to the plaintiff, completed the necessary paperwork and the plaintiff signed the EEOC Charge of Discrimination Form ("EEOC Charge") prepared by Smalls.  *Id.*  The EEOC Charge does not include allegations of retaliation or failure to promote, but instead asserts discrimination for color and national origin with a statement of the plaintiff's belief that he was terminated for discriminatory reasons.  Pl.'s Supplemental Statement ¶¶ 67-68; Pl.'s Dep., Attach. 22 ("EEOC Charge").  The Questionnaire and the EEOC Charge were sent to the defendant.[4]  Pl.'s Opp'n at 5.  On September 21, 2006, the EEOC issued a "Notice of Right to Sue" letter to the plaintiff who subsequently filed his claims in this court asserting that the defendant failed to promote him for discriminatory reasons and that he was terminated in retaliation for his earlier confidential complaint.  Compl. ¶ 1; EEOC Charge.

---

[4]  Although the parties disagree on whether the plaintiff properly exhausted his administrative remedies, the court accepts as true the plaintiff's version of the facts.  *Anderson*, 477 U.S. at 248.  The plaintiff asserts that he included failure to promote and retaliation allegations in the Questionnaire and that Smalls informed him that she would attach the Questionnaire to the EEOC Charge and send both to the defendant.  Pl.'s Aff. ¶ 45.  The defendant states that it received the EEOC Charge but not the Questionnaire.  Def.'s Reply at 4 n.3.  The court, however, assumes that the EEOC submitted the Questionnaire to the defendant, that the Questionnaire included the failure to promote and retaliation claims, and that those claims were properly exhausted at the administrative level.  *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (noting that prior to filing a discrimination suit in a federal court, a Title VII plaintiff must exhaust administrative remedies by filing a charge with the EEOC alleging the unlawful conduct by the employer).

The defendant now moves for summary judgment, maintaining that the plaintiff has not provided evidence to support his claims. *See generally* Def.'s Mot. The defendant also argues that the plaintiff failed to exhaust administrative remedies for his Title VII claims. *Id.* at 3. The plaintiff opposes the motion, *see generally* Pl.'s Supplemental Opp'n, and the court turns now to the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson,* 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary judgment motions in such cases with special caution.  *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### B.  The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's Failure to Promote Claims

#### 1.  The Plaintiff's Claims for Failure to Promote in 2001 and 2003 Are Barred by the Statute of Limitations

The defendant argues that the statute of limitations bars the plaintiff's 2001 and 2003 failure to promote claims because the actions at issue did not occur within 300 days prior to the filing of the EEOC Charge, as required by Title VII.  Def.'s Mot. at 5.  The plaintiff, however, counters that he is within the statute of limitations because he alleged a failure to promote claim from May 2005.  Pl.'s Opp'n at 7-8.

Relief under Title VII depends upon the filing of a timely administrative charge. *United Air Lines v. Evans,* 431 U.S. 553, 558 (1977); 42 U.S.C. § 2000e-5(f)(1). Untimely allegations are time-barred. *DuVall v. Postmaster Gen., U.S. Postal Serv.,* 585 F. Supp. 1374, 1376 (D.D.C. 1984), *aff'd,* 774 F.2d 510 (D.C. Cir. 1985). In order to fulfill this requirement, a plaintiff must file an EEOC charge within 300 days of the allegedly discriminatory action. 42 U.S.C. § 2000e-5(e)(1); s*ee Lewis v. District of Columbia*, 535 F. Supp. 2d 1, 7 (D.D.C. 2008). For failure to promote claims, the court may consider only those discrete acts that fall within the statute of limitations. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Additional instances that fall outside the statute of limitations may support a timely claim only as "background evidence." *Id.* at 113.

In the instant case, the EEOC Charge is dated February 14, 2006. *See* EEOC Charge. Therefore any alleged discrimination that occurred before April 20, 2005 falls outside the statute of limitations. Thus, the plaintiff's claims for failure to promote in 2001 and 2003 are barred. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113-14. The plaintiff misstates the law when he argues that he can proceed with his 2001 and 2003 claims because he has also alleged a similar claim from May of 2005. Pl.'s Opp'n at 8. The law is clear that the plaintiff cannot move forward with failure to promote claims based on his 2001 and 2003 applications because they are not within the statute of limitations. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 114. The plaintiff can, instead, only use those instances as supporting evidence for his claim of failure to promote in May 2005. *Id.* at 114. The court, therefore, holds that the failure to promote claims stemming from the 2001 and 2003 applications are time-barred.

### 2. Legal Standard for Failure to Promote

Generally, to prevail on a claim of discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of failure to promote for discriminatory reasons under Title VII, the plaintiff must show that: (1) he is the member of a minority group; (2) he applied and was qualified for a promotion; (3) despite his qualifications, he was rejected; and (4) other employees of similar qualifications who were not members of the protected group were promoted at the time the plaintiff's request was denied. *McDonnell Douglas Corp.,* 411 U.S. at 802; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C. Cir. 1981). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.*

If the employer successfully presents a legitimate, non-discriminatory reason for its

actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow").  The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff.  *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289).  The plaintiff need not present evidence in each of these categories in order to avoid summary judgment.  *Aka*, 156 F.3d at 1289.  Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case.  *Id.* at 1291.

### 3. The Plaintiff Has Failed to Establish a Prima Facie Case for Failure to Promote

The defendant argues that the plaintiff failed to establish a prima facie case for failure to promote.  Def.'s Mot. at 6.  The court, therefore, does not go beyond determining the strength of the plaintiff's prima facie case within the *McDonnell Douglas* burden-shifting framework.  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 650-51 (D.C. Cir. 2003).  The defendant asserts that the plaintiff has not established a prima facie case of failure to promote.  Def.'s Mot. at 7.  The plaintiff contends that he has met all four elements of establishing a prima facie case because (1) he is a Nigerian, (2) he applied for a supervisory/managerial position for which he was qualified, (3) he never received these promotions and (4) less qualified Ethiopian and white candidates were promoted instead.  Pl.'s Opp'n at 8-9.

The evidence submitted by the plaintiff, however, fails to support the proposition that he

passed over for promotions in favor of Ethiopian and white candidates. *See McDonnell Douglas Corp.,* 411 U.S. at 802 (holding that the plaintiff carries the burden of showing that, after he was rejected for a promotion, "the position remained open and the employer continued to seek applicants from *persons of complainant's qualifications*" (emphasis added)); *Bundy*, 641 F.2d at 951 (opining that "to make out a prima facie case [a] plaintiff must show . . . that other employees of similar qualifications who were not members of the protected group were indeed promoted *at the time* the plaintiff's request for promotion was denied" (emphasis added)). To establish a prima facie case of failure to promote, the plaintiff here must demonstrate that, not only was he not selected for a promotion, but that employees with similar qualifications who are not Nigerian were promoted for the position sought by the plaintiff. *Id*. Although the plaintiff does proffer that a lower ranked, Ethiopian employee, Sadette,[5] was promoted over him, Pl.'s Opp'n at 8, he does not offer any evidence that he and Sadette had similar qualifications or that he was significantly more qualified than Sadette, *see generally id*. Indeed, the plaintiff does not address Sadette's qualifications at all and states only that Sadette was "lower ranked." *Id*. Similarly, the defendant references the promotion of Allen Brown, a "White American," *id*. at 8-9, but also fails to compare his qualifications with Brown's and doesn't allude to Brown's rank at all, *see generally id.* Thus, the plaintiff has failed to provide the court with any basis of comparison for determining that he was improperly denied a promotion in favor of similarly qualified candidates. *McDonnell Douglas Corp.,* 411 U.S. at 802.

Lastly, the plaintiff does not indicate in what years Sadette and Brown were promoted. *See generally* Pl.'s Opp'n. As the court has held that the plaintiff's 2001 and 2003 claims for failure to promote are barred by the statute of limitations, the plaintiff has not provided evidence

---

[5] The plaintiff does not provide this employee's full name; he is referred to only as "Sadette." *See* Pl.'s Opp'n at 8.

from which a reasonable jury could concluded that the promotion of Sadette and Brown relate to the plaintiff's 2005 claim. *Bundy*, 641 F.2d at 951. In reviewing the evidence submitted for summary judgment motions in discrimination cases, the court recognizes that special caution is required because proof of discrimination is difficult to establish. *See Aka.*, 116 F.3d at 879-80; *see also Johnson*, 836 F. Supp. at 18. The plaintiff, however, has produced no evidence suggesting that Sadette and Brown were promoted to the position the plaintiff sought in 2005 and had similar or significantly inferior qualifications.

A failure to present evidence to support the elements of a claim is a basis for the granting of summary judgment. *Celotex*, 477 U.S. at 322. Because the plaintiff has not demonstrated that other similarly qualified, non-Nigerian candidates were promoted over him, he cannot establish a prima facie case of discrimination and the defendant is entitled to summary judgment on the plaintiff's 2005 failure to promote claim.

### D.  The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's Retaliation Claim

#### 1.  Legal Standard for Retaliation

To prevail on a claim of retaliation under Title VII in cases in which the defendant does not present a legitimate, non-retaliatory reason for its actions, a plaintiff must follow the *McDonnell Douglas* framework. *Lathram*, 336 F.3d at 1088 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-05); *Morgan*, 328 F.3d at 651 (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell Douglas* framework to a Rehabilitation Act retaliation claim). By the time the district court considers an employer's motion for summary judgment, however, the employer ordinarily will have asserted a non-discriminatory reason for its actions. *Brady*, 520 F.3d at 493. In those cases, the question of whether the employee

satisfied the first step of the *McDonnell Douglas* test is irrelevant. *Id.* "[T]he McDonnell Douglas framework . . . disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *see also Brady*, 520 F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow").

Thus, if the defendant presents a legitimate, non-retaliatory reason for its actions, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee . . . ." *Brady*, 520 F.3d at 494; *Weber*, 494 F.3d at 186. The court must consider whether the jury could infer retaliation from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of retaliation that may be available to the plaintiff. *Smith v. District of Columbia*, 430 F.3d 450, 455 (2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)); *Waterhouse*, 298 F.3d at 992-93 (quoting *Aka*, 156 F.3d at 1291). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 2. The Plaintiff Fails to Establish that the Defendant's Asserted Non-Retaliatory Reasons for Termination Were Pretextual

The plaintiff asserts that the defendant fired him in retaliation for his confidential complaint against Rettinger. Pl.'s Opp'n at 11. The defendant argues that terminating the plaintiff was reasonable because the plaintiff exhibited improper behavior in a customer area after receiving a final warning. Def.'s Mot. at 15. The defendant provides support for terminating the plaintiff through excerpts of Akalu's deposition, statements from employee

witnesses and a statement from the plaintiff. Akalu Dep. at 49; Dewa Statement; Membere Statement; Pl.'s Dep., Attach. 18 ("Pl.'s Description of Mayflower Incident").

The plaintiff counters that termination over this incident was unreasonable because Akalu did not suspend the other employees allegedly involved in the incident, did not allow the plaintiff to present his side of the story and ignored the recommendation of Oladiji Adelekan,[6] the Assistant Manager, to keep the plaintiff as an employee. Pl.'s Opp'n at 15. The plaintiff claims, instead, that the real reason for his termination was retaliation for the confidential complaint he filed against Rettinger. Pl.'s Aff. ¶ 41. As the defendant points out, however, the plaintiff was on notice with a final warning that a future violation of company policy could result in termination. Def.'s Mot. at 15. Moreover, the defendant supports its position with witness statements. *See* Dewa Statement; Membere Statement. The defendant has made clear that it had a reasonable belief that the plaintiff violated company policy and terminated him for that reason. *See Brady*, 520 F.3d at 496 (stating that if the employer reasonably believed that the alleged incident occurred, then a demotion decision is justified unless there is evidence that the employer's conclusion was dishonest or unreasonable). As such, the defendant has articulated a legitimate, non-retaliatory reason for terminating the plaintiff.

Strong evidence establishing retaliation may effectively rebut a defendant's asserted legitimate, non-discriminatory reasons. *See Aka*, 156 F.3d at 1289 n.4; *Cone v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In the instant case, however, fourteen months passed between the protected activity and the alleged retaliatory action, thereby suggesting little, if any, causation. *Clark County Sch. Dist.*, 532 U.S. at 273

---

[6] The court notes that Adelekan was not actually present during the incident and instead intervened to resolve the matter at the hotel after Dewa reported the argument. Pl.'s Opp'n, Ex. 6 ("Adelekan Aff.") ¶¶ 7, 8.

(noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at all"); *Broderick v. Donaldson*, 338 F. Supp. 2d 30, 43 (D.D.C. 2004) (stating that courts will not infer causation when the time lapse between the protected activity and adverse action is more than a year).  Because the plaintiff has presented no evidence of causality, the court concludes that a reasonable jury could not infer retaliation and therefore the plaintiff fails to overcome the defendant's asserted legitimate, non-discriminatory reasons for terminating him.  *Smith*, 430 F.3d at 455.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of July, 2009.

RICARDO M. URBINA
United States District Judge